**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JIMMY FRANK CAMERON,** | ) | |
| **#105591** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO.: 2:07-CV-35-WHA** |
| | ) | |
| **STATE OF ALABAMA, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JOINT SPECIAL REPORT

**COMES NOW**, the State of Alabama, by and through **Attorney General Troy King,** and in accordance with this Honorable Court's Order of January 10, 2007, does hereby submit the following Special Report.

## PARTIES

1. The Plaintiff, Jimmy Frank Cameron, AIS# 105591, ("Mr. Cameron") is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated at Bullock County Correctional Facility ("Bullock") in Union Springs, Alabama.

2. Mr. Cameron has named the following Defendants:

    a. Troy King ("Attorney General King"), Attorney General of the State of Alabama.

    b. The Alabama Department of Corrections ("Corrections").

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

Mr. Cameron seeks declaratory relief and alleges in his complaint that Defendants have violated his constitutional rights. Specifically, Mr. Cameron alleges:

1.  Ala. Code § 15-20-20, et seq. (1975), otherwise known as "The Community Notification Act" ("the Act") violates Mr. Cameron's due process rights because application of the Act would deprive Mr. Cameron of life, liberty, property, and reputation.

2.  The Act violates the "*Ex Post Facto* clause of Article 1, § 10 of the United States Constitution," by "punishing Plaintiff more than once for one crime that happened thirty years ago" and by classifying the inmate as a sex offender after his conviction.

3.  The Act as applied to him violates his Eighth Amendment rights to be free from cruel and unusual punishment.

## DEFENDANTS' EXHIBITS

1.  Exhibit A – Alabama Board of Pardons and Paroles Report of Investigation dated December 10, 1991.

2.  Exhibit B – Transcript of Record in Franklin County dated December 23, 1991.

3.  Exhibit C - Affidavit from Ann Gault, Board Operations Manager for the Alabama Board of Pardons and Paroles.

    4.    Exhibit D - ADOC Admin. Reg. No. 400 "Classification of Inmates," and Inmate Cameron's classification.

## DEFENDANTS' RESPONSE

1.    Insofar as Mr. Cameron seeks monetary damages, Defendant Attorney General King, named in his official capacity, is immune by virtue of sovereign immunity.

2.    Defendants deny violating Mr. Cameron's constitutional rights.

3.    Defendants request that this Honorable Court consider this report as a Motion for Summary Judgment at such time when this Honorable Court sees fit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).  Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986).  Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id.  Merely submitting restated allegations of the complaint is not sufficient to meet the non-movant's burden. Morisky v. Broward County, 80 F.3d. 445, 448-449 (11th Cir. 1996). This case is ripe for summary judgment because

there is no genuine issue of fact to Mr. Cameron's claims and the Defendants are entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

Mr. Cameron carefully fails to disclose any of his criminal history in his complaint against the Defendants.  Mr. Cameron has a lifelong criminal history that is rather lengthy. (Ex. A)  However, Defendants will attempt to focus only on those crimes that influence Mr. Cameron's status as a criminal sex offender and the necessity to classify him as a criminal sex offender.

On May 14, 1976, a then twenty-seven-year-old Jimmy Frank Cameron was convicted of a Crime Against Nature (Sodomy) in Escambia County Circuit Court (Ex. A).  Mr. Cameron was sentenced to 10 years imprisonment. (Ex. A). However, between 1967 and present, Mr. Cameron has been convicted of approximately 13 felony offenses, including Grand Larceny, multiple counts of Burglary, Escape, Theft of Property, Aggravated Assault, Arson, Felony DUI, and Promoting Prison Contraband. (Ex. A).

On December 16, 1991, Mr. Cameron was convicted of Burglary 2nd (CC-91-086) in Franklin County Circuit Court.  (Ex. B). Based on his status as a habitual and violent offender, Mr. Cameron was sentenced to life imprisonment. (Ex. B).  Mr. Cameron is currently housed at Bullock County Correctional Facility. The inmate was denied parole on March 6,

2007, and is not scheduled for another parole hearing until March 2009. (Ex. C). Mr. Cameron was classified as a sex offender for purposes of ADOC internal classification based on: the ADOC Corrections Classifications Manual, ADOC Admin. Reg. No. 400 "Classification of Inmates," and his criminal background. (Ex. D). Mr. Cameron has remained classified as a sex offender for purposes of ADOC since 1996. (Ex. D).

Obviously, the classification as a sex offender is based on the 1976 conviction for the Crime Against Nature (Sodomy), an offense clearly recognized as a registration offense under Alabama Code § 13A-11-200 and now governed by Ala. Code § 15-20-20, et seq. (1975), otherwise known as "The Community Notification Act".

## ARGUMENT OF FACT AND LAW

From the outset, the State asserts that all legislative enactments, including the Community Notification Act ("the Act"), are presumed to be constitutional. Town of Vance v. City of Tuscaloosa, 661 So. 2d 739, 742 (Ala. 1995). In Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984), the Alabama Supreme Court stated:

> "In determining whether [an] act is constitutional, we are bound by the following presumption:
>
> "'[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in

the simple statement that it is the recognized duty of
the court to sustain the act unless it is clear beyond
reasonable doubt that it is violative of the
fundamental law.'"

459 So.2d at 840.

In his complaint, the Plaintiff contends that the Act violates the Ex
Post Facto and Due Process clauses, his Eighth Amendment right to be
free from cruel and unusual punishment, and his rights as guaranteed by
parallel clauses of the Alabama Constitution of 1901. These contentions,
however, are untenable in the light of existing law.

I.    **The Plaintiff has no right to individualized procedural due
process prior to enforcement of the Community Notification Act.**

The Due Process Clause of the Fourteenth Amendment to the United
States Constitution provides that no state "shall deprive any person of
life, liberty, or property without due process of law." To succeed on his
procedural due process claim, Cameron must establish that (1) the
Community Notification Act deprives him of a protected liberty interest,
and (2) the procedures accompanying the deprivation are constitutionally
inadequate. Kentucky Department of Corrections v. Thompson, 490 U.S.
454, 460, 109 S.Ct. 1904, 1908 (1989). Under the facts of this case, the
plaintiff has failed to demonstrate a likelihood of success on the merits of
his claim that the Act deprives him of a protected liberty or property
interest in violation of his due process rights.

In this instance, the Plaintiff is not entitled to procedural due
process because the enforcement of the Act would not deprive him of a

property right or any other legally protected liberty interest. Although the Act strictly places restrictions on where the plaintiff may reside and work and with whom he may live, persons found to have committed a criminal sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. Moreover, the danger of recidivism posed by criminal sex offenders and the protection of the public from these offenders is a paramount concern or interest to government.

The restrictions set forth in the Act do not contravene principles of procedural due process under the Constitution. The restrictions apply to all offenders who have been convicted of certain criminal sex crimes, regardless of what estimates of future dangerousness might be proved in individualized hearings. Once legislative classifications have been determined, additional procedures are unnecessary, because the statute does not provide exemptions for individuals who seek to prove that they are not individually dangerous or likely to re-offend.

Additionally, the Act does not allow the State to physically invade or otherwise appropriate the plaintiff's property. Even if enforcing the Act were to deprive the plaintiff of his property, he nonetheless has no right to procedural due process in this case, because no such right attends legislative enactments—such as the Community Notification Act—that affect a general class of persons—such as a class comprised of convicted sex offenders. "When a legislature enacts a law ... that affects a general

class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention. The challenges to such laws ... must be based on their substantive compatibility with constitutional guarantees." United States v. LULAC, 793 F.2d 636, 648 (5th Cir. 1986). See also Atkins v. Parker, 472 U.S. 115, 129-30, 105 S. Ct. 2520, 2529 (1985); Richmond Boro Gun Club, Inc. v. City of New York, 97 F.3d 681, 689 (2nd Cir. 1996); Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989); Gillespie v. City of Indianapolis, 13 F. Supp. 2d 811, 825 (S.D. Ind. 1998); Sammy's of Mobile, Ltd. v. City of Mobile, 928 F. Supp. 1116, 1123 (S.D. Ala. 1996); 2 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure § 17.8 at 646 (2d ed. 1992). This principle derives from the U.S. Supreme Court's decision in Bi-Metallic Investment Co. v. State Bd. of Equalization, 239 U.S. 441, 36 S. Ct. 141 (1915), in which Justice Holmes, writing for the Court, stated:

> "When a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."

239 U.S. at 445, 36 S. Ct. at 142.

Finally, even if the plaintiff were generally entitled to procedural due process, he is not so entitled in this case because there is no factual dispute as to the applicability of the Act to the plaintiff under his current circumstances. "Generally, if government action will deprive an individual of a significant property interest, that individual is entitled to an opportunity to be heard. ... However, a hearing is not required if there is no factual dispute." Sec. and Exch. Comm'n v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992) (citing Codd v. Velger, 429 U.S. 624, 97 S. Ct. 882 (1977) (emphasis added). See also Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n, 889 F.2d 929, 936 (10th Cir. 1989); 2 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure § 17.8 at 645-46 (2d ed. 1992). In the present case, there is simply no factual dispute to be resolved. In 1976, the plaintiff was convicted of Sodomy. (Ex. A.)

Section 15-20-21(1) of the Code defines an adult criminal sex offender as "A person convicted of a criminal sex offense, including a person who has pleaded nolo contendere to a criminal sex offense, regardless of whether adjudication was withheld." Ala. Code § 15-20-21(1) (Supp. 2005). In this instance, the facts relate to Sodomy which is a criminal sex offense under Alabama law. See Ala. Code § 15-20-21 (4)(b) (Supp. 2005). Because it is undisputable that the terms of the Act plainly apply to the plaintiff, there is no danger that the provisions of the Act will be wrongfully applied to him. Thus, there is no need to conduct

a hearing or take any further steps—i.e. to give the plaintiff procedural due process—before the Act's provisions are brought to bear on the plaintiff.

Moreover, substantive due process does not appear to be implicated as Cameron has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate information that is already, albeit less conveniently, available in the public domain. In <u>Smith v. Doe</u>, 538 U.S. 84, 123 S.Ct. 1140 (2003), the Court stated: 'The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.'" <u>Smith</u>, 538 U.S. at [99], 123 S.Ct. at 1150 (2003).

In the light of the foregoing, the State submits that there is no genuine issue of material fact and there is not a reasonable likelihood that Cameron will succeed on the merits of his substantive due process claim.

**II.    The Community Notification Act does not violate either the Ex Post Facto or Bill of Attainder Clauses of the United States Constitution.**

Mr. Cameron contends that the Community Notification Act imposes unconstitutional punishment under the Ex Post Facto and Bill of Attainder Clauses. The Ex Post Facto Clause directs that the government may not apply a law retroactively that inflicts a greater punishment, than the law annexed to the crime, when committed." <u>Calder v. Bull</u>, 3 U.S.

386, 390, 1 L.Ed. 648 (1798).   Under the Bill of Attainder Clause, legislatures are forbidden to engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial."  United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715 (1965).

In Smith v. Doe, 538 U.S. 84 (2003), the Court addressed an Ex Post Facto challenge to the Alaska Sex Offender Registration Act, one similar to the Alabama Community Notification Act in both its registration and notification requirements.   Specifically, the Court "considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause."  Smith, 538 U.S. at 92.  The Court held that "[t]he [Alaska] Act is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause."  Id., 538 U.S. at 105-106.

Moreover, the United States Supreme Court upheld Kansas's Sexually Violent Predator Act against a challenge that it violated the Ex Post Facto Clause.   Kansas v. Hendricks,  U.S. ___, 117 S. Ct. 2072 (1997).  In upholding the Kansas statute, the Supreme Court held that "the Ex Post Facto Clause, which forbids the application of any new punitive measure to a crime already consummated, has been interpreted to apply to penal statutes."  Hendricks at 2086.  See also Maples v. McDonald, 668 So. 2d 790, 793 (Ala. Civ. App. 1995).  In deciding that the Kansas Act

was not an Ex Post Facto law, the Supreme Court held that the act did not impose additional punishment.

The Court explained that, in order to determine whether a statute is punitive in nature, it proceeds through a two-step inquiry. The first inquiry is a matter of statutory construction. The second inquiry will only reject the "legislature's manifest intent where a party challenging the statute provides 'the clearest proof' that the statutory scheme is so punitive in purpose or effect as to negate the State's intention." Hendricks at 2082 (emphasis added).

The preamble to Alabama's Community Notification Act sets out what the Alabama Legislature intended when it enacted the statute. There, the legislature stated that it acted due to the "danger of recidivism posed by criminal sex offenders." The preamble also states that the Community Notification Act was intended both as a tracking tool for law enforcement agencies in the investigation of criminal sex offenders, as well as for the protection of the public, especially children, from the dangers posed by criminal sex offenders. The primary purpose of the notification provisions is to facilitate the disclosure of information about sex offenders so that the community can protect itself and its children. See Lambert v. California 355 U.S 225, 229, 78 S. Ct. 240, 243 (1957) (Felony registration is "[a]t most ... a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is

compiled.  The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained").  As the Alabama Supreme Court stated in <u>Clayton v. Board of School Commissioners</u>, 552 So. 2d 152, 154 (Ala. 1989), "[A] statute is not rendered retroactive simply because it draws upon facts and information existing prior to its enactment."  The mere fact that the Community Notification Act may be "tied to criminal activity is insufficient to render the statute punitive."  <u>Hendricks</u> at 2082.

In regard to the Hendricks decision's second prong, the plaintiff has not proffered "the clearest proof" needed to demonstrate that the Community Notification Act is so punitive in purpose or effect as to negate the legislature's expressed intention.  In fact, he has not made any allegations whatsoever that would support a determination that the Community Notification Act indeed has such a pervasive punitive effect.  The Plaintiff suggests that he has been "branded" a criminal sex offender and as a result, the State of Alabama has wrongfully imposed an affirmative disability or restraint upon him.  By contrast, any stigma of the Community Notification Act results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public.  The dissemination of truthful information in furtherance of a legitimate governmental objective is not punishment.  To the contrary, our system

requires a public indictment, a public trial, and a public imposition of sentence, all of which the offender has previously received.

Virtually every court, including Alabama, that has addressed the issue of whether community notification statutes are Ex Post Facto laws has applied the analysis employed in <u>Hendricks</u>, and has reached the conclusion that such legislative acts, which are designed to give the public notice of sex offenders in their communities, are not unconstitutional.[1]

Indeed, Alabama's Community Notification Act is a remedial and regulatory statute, not a punitive one. In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the offender's convictions without violating the prohibitions of the Ex Post Facto Clause.

The legislature did not act with punitive intent, and any arguably punitive impact on those persons subject to the provisions of the Community Notification Act is simply an incidental consequence of the statute's remedial provisions. Although some consequences may result

---

[1] <u>Arizona Dept. of Public Safety v. Superior Court</u>, 949 P. 2d 983 (Ariz. Ct. App. 1997); <u>People v. Fioretti</u>, 63 Cal. Rptr. 2d 367 (Cal. Ct. App. 1997); <u>Ortega v. State</u>, 712 So. 2d 833 (Fla. Dist. Ct. App. 1998); <u>State v. Costello</u>, 643 A.2d 531 (N.H. 1994) <u>People v. Starnes</u>, 653 N.E. 2d 4, 210 (Ill. App. Ct. 1995); <u>State v. Pickens</u>, 558 N.W. 2d 396 (Iowa 1997); <u>State v. Hemby,</u> 957 P. 2d 428 (Kan. 1998); <u>Doe v. Attorney General</u>, 686 N.E.2d 1007 (Mass. 1997); <u>State v. Manning</u>, 532 N.W. 2d 244 (Minn. Ct. App. 1995); <u>In re Parolee</u>, 668 N.Y.S. 2d 53 (N.Y. App. Div. 1998); <u>M.G. v. Travis</u>, 667 N.Y.S. 2d 11 (N.Y. App. Div. 1997); <u>State v. Bruns</u>, 1998 WL 412451 (Ohio Ct. App. Jul 24, 1998); <u>Williford v. Board of Parole and Post-Prison Supervision</u>, 904 P. 2d 1074 (Or. Ct. App. 1995); <u>Commonwealth. v. Mountain</u>, 711 A.2d 473 (Pa. Super. Ct. 1998); <u>Commonwealth. v. Gaffney</u>, 702 A. 2d 565 (Pa. Super. Ct. 1997); <u>Perez v. State</u>, 938 S.W. 2d 761 (Tex. Crim. App. 1997; <u>Kitze v. Commonwealth</u>, 475 S.E. 2d 830 (Va. Ct. App. 1996); <u>Snyder v. State</u>, 912 P. 2d 1127 (Wyo. 1996); <u>State v. Ward</u>, 869 P. 2d 1062 (Wash. 1994).

from the enforcement of the Community Notification Act, that alone does not render it an ex post facto law, nor does it otherwise make the Act unconstitutional.  The legislature's intent was not to punish an individual for past activity.  Rather, the legislature intended to create a regulatory scheme, and the "restriction of [any] individual comes about as a relevant incident to a regulation of a present situation."  De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155 (1960).  Therefore, the Community Notification Act is not an Ex Post Facto law, and the petitioner's arguments to the contrary should be rejected.

**III.    The Community Notification Act does not violate Mr. Cameron's Eighth Amendment right to be free from cruel and unusual punishment.**

Mr. Cameron claims the Community Notification Act violates his Eighth Amendment right to be free from cruel and unusual punishment. The Act is reasonably related to its regulatory purpose and is not punitive. Therefore, in view of our conclusion that the statute is not punitive, it follows that the law is not "cruel and unusual punishment" in violation of the Eighth Amendment.  In Smith v. Doe, 538 U.S. 84, 86, 123 S.Ct. 1140 (2002), the United States Supreme Court addressed this issue and stated as follows:

> First, the regulatory scheme, in its necessary operation, has not been regarded in the Nation's history and traditions as a punishment.  The fact that sex offender registration and notification statutes are of fairly recent origin suggests that the Act was not meant as a punitive measure, or, at least, that it did not involve traditional means of punishing.

538 U.S. at 86, 123 S.Ct. at 1144.

The United States Supreme Court has set forth the standards used to determine such a violation, however. "The standards for judging whether a sentence amounts to cruel and unusual punishment are whether the conditions of confinement shock the conscience, whether the sentence is greatly disproportionate to the offense, or whether it offends evolving notions of decency." U.S. v. Gamboa, 543 F. 2d 545, 548 (5th Cir. 1976).

Courts determine if a punishment is "cruel and unusual" under evolving standards of decency. Atkins v. Va., 536 U.S. 304, 322 (2002); Trop v. Dulles, 356 U.S. 86, 101 (1958). Legislation is the "clearest and most reliable objective evidence of contemporary values." Penry v. Lynaugh, 492 U.S. 302, 331 (1989). "Judgments about the appropriate punishment for an offense belong in the first instance to the legislature." U.S. v. Bajakajian, 524 U.S. 321, 336 (1998). "Reviewing courts...should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983). "The legislature selects the range of punishments" and it is the duty of the courts to "uphold the legislature if there is any rational basis for so doing." Rummel v. Estelle, 587 F.2d 651, 655 (5th Cir. 1978) (recidivist statute mandating a life sentence to repeat offenders is not unconstitutional even if the offenses were nonviolent). A petitioner does not discharge his burden because he would be treated better in another state or can come up

with a more rational system than the one adopted by the legislature. Rummel, 587 F.2d at 655.

As noted, the preamble to Alabama's Community Notification Act clearly sets out what the Alabama Legislature intended when it enacted the statute. There, the legislature stated that it acted due to the "danger of recidivism posed by criminal sex offenders." Ala. Code § 15-20-20.1. Moreover, Section 13A-11-200(a) of the Code states, "The Legislature declares that its intent in imposing certain reporting and registration requirements on criminal sex offenders is to protect the public, especially children, from the dangers posed by criminal sex offenders and not to further punish such offenders." Ala. Code § 13A-11-200(a).

"If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Bajakajian, 524 U.S. at 337. Proportionality analysis is "guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). In this instance, the gravity of Mr. Cameron's offense, Sodomy, warrants certain restrictions. Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the

17

Legislature has found that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. Moreover, residency, employment, association, and loitering restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." Id. at 289-90.

In his complaint, Mr. Cameron decries the conditions of his confinement. Specifically, he suggests that his status as a criminal sex offender has prevented him from participating in the work release program and from making minimum custody. "The Eighth Amendment outlaws cruel and unusual 'punishments,' not 'conditions.'" Farmer v. Brennan, 511 U.S. 825, "Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstititutional" even if restrictive or harsh, as "they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (double celling of inmates at a particular facility was not cruel and unusual punishment).

There is no constitutionally guaranteed right to work release. All less restrictive placements, programs, and custodies are privileges to which no offender enjoys any right or entitlement of consideration, let alone participation. The sentence imposed on Inmate Cameron was intended not only as punishment, but to insure his removal from society for a significant period of time. There is no presumption of work release or any other placement when sentenced. Denying Inmate Cameron work release does not increase the length of sentence nor impose an undue hardship.

The primary directive of the ADOC is to insure the protection of the public and to that end all determinations of classifications must and will be predicated. Classification is not predicated merely upon the nomenclature of an offense at the time of sentencing, but rather the elements of the offense which are critical in making determinations of risk. The details of Inmate Cameron's crime are a matter of record and they are significant.

In the light of the foregoing, the State submits that Mr. Cameron cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint. For that reason, there exists no genuine issue of material fact and the plaintiff's complaint is due to be rejected.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants, by and through **Attorney General Troy King**, respectfully request that this court consider treating this Special Report as a Motion for Summary Judgment, and enter judgment in favor of the Defendants.


RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL
KIN047



/s/ *Joshua S. Bearden* _____
Joshua S. Bearden (BEA070)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants



OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
11 South Union Street
Montgomery, AL  36130
(334) 242-7300
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 13th day of March, 2007, served a copy of the foregoing on the plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Jimmy Frank Cameron, #105591
Bullock County Correctional Facility
104 Bullock Drive-P.O. Box 5107
Union Springs, AL 36089

Mr. Paul Whaley
Director of Classification
Alabama Department of Corrections
P.O. Box 301501
Montgomery, Alabama 36130

Mr. Kim Thomas
Legal Division
Alabama Department of Corrections
Montgomery, Alabama 36130

   /s/  *Joshua S. Bearden*
OF COUNSEL

ALABAMA BOARD OF PARDONS AND PAROLES

REPORT OF INVESTIGATION

Type of Investigation __Pre Sentence__                               Date Dictated __12-10-91__

Name __Jimmy Frank CAMERON__                    True Name __Same__

Alias __None__

RSA __WM-42__          DOB __12-30-48__          Height and Weight __5'10"    160 lbs.__

Complexion __Fair__                              Color of Hair __Brown__  Color of Eyes __Hazel__

Bodily Marks __Tattoo on left arm-"Butterfly"; right arm- "Butterfly"; Small cross on left thumb; scars on left shoulder__

Driver's License # __Suspended__                 SS# __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__

AIS# _____  FBI# __935-942 F__        SID# _____

Address __Rt. 3, Box 12-B__                      Phone #__31-9762__  (Mother)

__Russellville, Alabama 35653__

County __Franklin__                              Case # __CC 91-086__

Offense(s) __Burglary 2nd__

Sentence(s) __Life__

Date of Sentence __12-16-91__       Date Sentence began __12-16-91__

Date of Arrest __6-4-91__     Date of Bond __6-22-91__       Bond Amt. # __500.00__

Judge __John Jolly__                 D.A. __Chris Hargett__

Attorney __Eddie Beason__                         Retained _____  Appointed __X__

Court Ordered Restitution # __Unknown__

Barred from Parole (Ala. Code 15-22-27.1) Yes _____  No __X__

NOTES:

2-7-98. C.R.

RECEIVED
JUN - 1 2005
BOARD OF PARDONS & CLASSIFICATION
BY _____ YS

EXHIBIT
A
PENGAD-Bayonne, N.J.

PBF 203 (10-1-86)

√S
6/1/05

Jimmy Frank Cameron
Pre Sentence Investigation
_____

## PRESENT OFFENSE

### County, Court and Case Number:

Franklin County Circuit Court, #91-086

### Offense:

Burglary 2nd

### Sentence:

### Date of Sentence:

### Details of the Offense:

At 3:45 PM on 6-2-91 Linda Ann Ritchie of 613 E. Pierce Street in Russellville,
Alabama, reported a burglary of her home. She claims that between the hours
of 3:00 and 3:30 PM someone entered her residence, took a microwave oven, valued
at $300, a Lawn Chief lawnmower with a Briggs and Stratton motor, valued at
$200, a Lerner's Bass Guitar, valued at $100 and a half carton of Bristol
cigarettes, valued at $5.00. Two witnesses advised Ms. Ritchie that they
had observed Jimmy Cameron and Ron Taliaferro loading something
in a vehicle during the time her house had been broken into. Ms. Ritchie
claimed that she was asleep and was of the opinion that someone entered her
home through the front door which was not locked.

Jimmy Frank Cameron was developed as a suspect in the burglary. On 6-4-91
Cameron was interrogated by Russellville Investigator William Nale. He
admitted his involvement in the burglary of Ms. Ritchie's residence.

### Serious Physical Injury Barring Parole:

None

### Subject's Statement:

"I started staying with Dorthy Nelson at East Side project. The next day I
walked toward the ball park. I saw Keith Cameron, Ron Taliaferro and the Baker
boys at the house on th corner. I started messing around with them. I was told
Ron and Keith was staying there with Linda Richie.

This Sunday about lunch time I was at Dorthys and Ron Taliaferro came over.
Ron wanted me to take him to Grady Olivers. We got in my car and Ron said I

-2-

Jimmy Frank Cameron
Pre Sentence Investigation

———————————————————————————————————————————————————

want to stop and see Linda first. I stopped at Lindas and Ron said I'm going to
get what stuff I've got here. Ron came out with a guitar and put it in the car.
Ron said help me load the lawn mower. The mower was sitting on the front porch.
We put the mower in the trunk of the car. After we got it loaded Ron went in the
house and got a microwave and he put it in the back seat. We left and went to
Grady Olivers. Ron sold the mower to a lady at Grady Olivers for $40.00. We
went to a bootlegger in Colbert County and bought beer with the money from the
lawn mower. Then we went to Phil Campbell. Ron said his Duddy would give more
for the microwave oven. We went on a gravel rd and Ron got rid of the oven.
Then we went to Florence and Ron got rid of the guitar some place we stayed that
night."

## Case Status of Co-defendant:

Ron Taliaferro, Franklin County Circuit Court #91-209, has been indicted on charges
of Burglary 2nd and Theft of Property 2nd. His cases are pending court action.

## Victim Notification Information:

NA

## Victim Impact:

Ms. Ritchie's lawnmower was recovered. However, she suffered a loss of $305 which
was for a microwave oven and a pack of cigarettes. Reportedly, the guitar belonged
to her son.

## Location of Offense:

This offense occurred within the city limits of Russellville, Alabama.

## Court Ordered Restitution:

## RECORD OF ARRESTS

### Prior Arrest Record:

| | | | |
|---|---|---|---|
| 9-12-66 | Colbert Co. Juvenile Ct. | Petit Larceny | Juvenile probation |
| 3-28-67 | Lawrence Co. Cir. Ct. #A-1672 | Burglary | 1 yr. and 1 day |
| 3-28-67 | Lawrence Co. Cir. Ct. #A-1673 | Burglary | 1 yr. and 1 day |
| 3-28-67 | Lawrence Co. Cir. Ct. #A-1674 | Burglary | 1 yr. and 1 day |

-3-

Jimmy Frank Cameron
Pre Sentence Investigation

| | | | |
|---|---|---|---|
| 3-28-67 | Lawrence Co. Cir. Ct. #A-1675 | Burglary | 1 yr. and 1 day |
| 3-28-67 | Lawrence Co. Cir. Ct. #A-1676 | Burglary | 1 yr. and 1 day |
| 10-25-67 | Lauderdale Co. Cir. Ct. | Burglary 2nd | 1 yr. and 1 day |
| 10-25-67 | Lauderdale Co. Cir. Ct. | Grand Larceny | 1 yr. and 1 day |
| 10-25-67 | Lauderdale Co. Cir. Ct. | Receiving and Concealing Stolen Property | 1 yr. and 1 day |
| 2-3-72 | Lawrence Co. Cir. Ct. #A-2310 | Burglary 2nd | 8 years |
| 5-14-76 | Escambia Co. Cir. Ct. CC 913 | Crime Against Nature | 10 years |
| 4-20-80 | PD Fultondale, Al. | Driving Under the Influence | |
| 5-4-81 | Lawrence Co. Cir. Ct. CC 80-210 | Burglary 3rd | 5 years |
| 5-4-81 | Lawrence Co. Cir. Ct. CC 80-211 | Escape | 5 years conc. with CC 80-210 |
| 5-4-81 | Lawrence Co. Cir. Ct. CC 80-212 | Promoting Prison Contraband | 5 years conc. with CC 80-210 |
| 5-4-81 | Lawrence Co. Cir. Ct. CC 80-213 | Arson 1st | 5 years conc. with CC 80-210 |
| 10-23-85 | Alabama Dept. of Public Safety | Driving Under the Influence | |
| 1-3-86 | Alabama Dept. of Public Safety | Driving While Revoked | |
| 9-2-86 | Alabama Dept. of Public Safety | Driving Under the Influence | |
| 6-19-87 | Franklin Co. Cir. Ct. CC 86-107 | VACSA, Count 1 Promoting Prison Contraband, Count 2 | Reduced to Attempt on each count. 360 days county jail-Count 1; 1 year under Count 2, suspended 2 years. |
| 9-14-88 | Alabama Dept. of Public Safety | Driving While Revoked | |
| 12-17-88 | Alabama Dept. of Public Safety | Driving While Revoked | |

-4-

Jimmy Frank Cameron
Pre Sentence Investigation

| | | |
|---|---|---|
| 10-13-89 | Alabama Dept. of Public Safety | Driving While Revoked |
| 10-13-89 | Alabama Dept. of Public Safety | Driving While Revoked |
| 12-23-89 | Alabama Dept. of Public Safety | Driving While Revoked |
| 12-23-89 | Alabama Dept. of Public Safety | Driving Under the Influence |
| 2-20-90 | Alabama Dept. of Public Safety | Driving Under the Influence |
| 4-21-90 | Alabama Dept. of Public Safety | Driving Under the Influence |
| 6-5-90 | Alabama Dept. of Public Safety | Driving While REvoked |
| 4-19-91 | Alabama Dept. of Public Safety | Driving While Revoked |
| 4-25-91 | Alabama Dept. of Public Safety | Failure to Appear |
| 8-9-91 | Alabama Dept. of Public Safety | Failure to Pay |
| 9-5-91 | Alabama Dept. of Public Safety | Driving While Revoked |

## PENDING OFFENSES

| | | | |
|---|---|---|---|
| 1-21-91 | Marion Co. Cir. Ct. #91-165 | Burglary 3rd | |
| Nov. 1991 | Franklin Co. Dist. Ct. #91-3109 | Driving While License REvoked | Set for 12-18-91 |

## PHYSICAL AND MENTAL HEALTH

Cameron has a variety of physical problems. He was in a serious vehicle accident in 1982 which resulted in the death of a companion. According to Cameron, both of his shoulders were crushed, his back was broken and he received some brain damage as a result of the accident. Cameron reports that in July of 1991, he was

-5-

Jimmy Frank Cameron
Pre Sentence Investigation

in a second serious vehicle accident. His brother was killed. According to
Cameron, his spine, neck and back were fractured and he suffered a punctured
lung. Cameron's injuries were to the extent that he was subsequently approved
to draw SSI Benefits.

Cameron admits a history of alcohol and drug abuse. He claims the most abused
drug has been pain killers. He claims he takes the medication to alleviate
pain from all of his injuries.

Cameron reported that on one occasion, he completed the substance abuse program
at Bryce Mental Hospital in Tuscaloosa, Al.

### PAROLE AND PROBATION OFFICER'S REMARKS

Cameron's record speaks for itself. We calculate he has been convicted of
13 felony offenses which would qualify for a sentence under the Alabama
Habitual Offender Act.

### PROBATION PLAN

**Home:**

In the event Cameron should apply for probation, his home program is to
live with his mother and sister at Rt. 3, Box 12-B, Russellville, Al.

**Employment:**

Cameron is not physically able to work. He reports he would continue to
draw SSI Benefits in the amount of $407 per month.

Signed and dated at Russellville, Alabama, this the 10th day of December, 1991.

C. E. Davis
ALABAMA PAROLE AND PROBATION OFFICER

CED/rah

–6–

ALABAMA BOARD OF PARDONS AND PAROLES
REPORT OF INVESTIGATION

*Limestone CC*

Type of Investigation __LEGAL FACTS INVESTIGATION_____ Date Dictated __10-10-97__

Name___ Jimmy Frank CAMERSON_____ True Name_____ same___

Alias_____

RSA___ WM_____ DOB _12-30-48____ Height & Weight __5'9"  174 lbs.___

Complexion_____ Color of Hair __Brown____ Color of Eyes___ Green__

Bodily Marks_____

Driver's License #_____ SS# ___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___

AIS# ___105591_____ FBI#_____ SID#_____

Address___ AL Dept. of Corrections_____ Phone #_____

_____

_____

County____ Limestone_____ Case # ___CC-97-338___

Offense(s)__ Promoting Prison Contraband II_____

Sentence__ 2 years concurrent_____

Date of Sentence___ 8-28-97_____Date Sentence Began_____ 8-28-97___

Date of Arrest__ 7-24-97___ Date of Bond_____ Bond Amt.$_____

Judge___ James W. Woodroof, Jr.___ D.A.___ James R. Fry/Kristi Valls___

Attorney___ Jonanna Cole_____ Retained_____ Appointed__ XX__

Court Ordered Restitution $_____

Barred from Parole Yes_____ No___ XX__

Copies sent to Central Records___ 10-10-97___ .
                                    (date)

NOTES:

PBF 203 (3/91)

ENTERED TERMINALS
DATE _12/17/97_ BY ___

Jimmy Frank CAMERSON          <u>LEGAL FACTS INVESTIGATION</u>
WM DOB: 12-30-48


<u>PRESENT OFFENSE(S)</u>


<u>County, Court & Case Number:</u>

Limestone Co., Circuit Court CC-97-338

<u>Offense:</u>

Promoting Prison Contraband II

<u>Sentence:</u>

2 years concurrent

<u>Date of Sentence:</u>

8-28-97

<u>Details of Offense:</u>

At the Limestone Correctional Facility in dormitory #12 in the first bathroom at A
side day room on the 29th day of October, 1996, Correctional Officer Scott Goodwin
was performing his assigned duties as a rover in this dormitory.  Officer Goodwin
noticed inmate Jimmy Cameron looking suspicious in the bottom bathroom.  Officer
Goodwin reported that he walked to the bathroom where inmate Cameron was standing.
Officer Goodwin instructed inmate Cameron to step into the bathroom so he could shake
him down.  Officer Goodwin stated that he noticed that inmate Cameron's eyes were
glassy and his speech slurred.  Officer Goodwin conducted a shake down of inmate
Cameron and found (2) white hand rolled cigarettes filled with a green leafy
substance that he believed to be marijuana.  Officer Goodwin also reported that he
found (2) bent paper clips with black marks on the end he believed used for smoking
the (2) cigarettes.  Officer Goodwin stated he notified Lt. Betina Carter of the
incident.  Officer Goodwin placed the hand rolled cigarettes in a sealed envelope and
placed them in the evidence box at the Limestone Correctional Facility.  These
cigarettes were sent to the forensic laboratory where they tested out to be (.2)
grams of marijuana.  Inmate Cameron was arrested and charged with Promoting Prison
Contraband II after he was indicted.  This arrest took place on 7-24-97.  Subject
plead guilty to this offense on 8-28-97 and received a (2) year sentence to run
concurrent with all present sentences subject is currently serving.

<u>Serious Physical Injury Barring Parole:</u>

None.

<u>Subject's Statement:</u>

Subject plead guilty to this offense on 8-28-97.

<u>Case Status of Co-Defendants:</u>

None.


2

Jimmy Frank CAMERSON                LEGAL FACTS INVESTIGATION
WM DOB: 12-30-48

Victim Notification Information:

State of Alabama

Victim Impact:

N/A

Location of Offense:

This offense happened in rural Limestone county.

Court Ordered Restitution:

No restitution was ordered in this case.


RECORD OF ARREST(S)


Prior Arrest Record:

None found in Limestone county.

Subsequent Arrest Record:

None found in Limestone county.


Signed and dated at Athens, Alabama this the 10th day of September, 1997.

Tom Hurley
Alabama Probation and Parole
Officer

TH/kk

3

*PV*

# TRANSCRIPT of RECORD
### (Conviction Report)

| | Case Number |
|---|---|
| CC | 91  086 |

| ID | YR | NUMBER |

State of Alabama
Form No 82 Rev 1 84

In the **CIRCUIT** Court of **FRANKLIN** County **ALABAMA**    Court ORI **033015**

STATE OF ALABAMA
vs.

DEC ' 91
RECEIVED
CENTRAL RECORDS OFFICE

| NAME/ALIASES | Jimmy Frank Cameron SS# 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 | | | SID No. |
| | | | | AIS No. |

| INMATE DESCRIPTION | DOB 12/30/48 | Sex [x] M  [ ] F | Height 6' | Weight 150 | Hair Color Brown | Eye Color Hazel |
| | Race | | Complexion Med | Age (if DOB missing) | Distinguishing Features or Marks | |
| | [x] W  [ ] B  [ ] Other (specify) | | | | | |

| ARREST INFORMATION | Date of Offense | Initial Arrest Date 6/4/91 | Arresting ORI |

| CHARGES | On Conviction: **Burglary, Second Degree** | | Offense Class [ ] A [ ] B [ ] C |
| COURT INFORMATION | Judge Name **John D. Jolly** | Prosecuting Attorney Name **Christopher W. Hargett** |

| PROBATION INFORMATION | Applied for:  Date: [ ] Yes [ ] No | Granted:  Date: [ ] Yes [ ] No | Rearrested:  Date: [ ] Yes [ ] No | Revoked:  Date: [ ] Yes [ ] No |

| SENTENCE INFORMATION | Term of Confinement YR **LIFE** MO DA | Act 754-76 [ ] Yes [x] No | Probation Term (If Act 754) YR MO DA | Jail Credit Ordered [x] Yes [ ] None |
| | Date Sentenced: 12/16/91 | Date Sentence Begins 12/16/91 | | YR MO DA |

| SENTENCE PROVISIONS | ☐ Concurrent  ☐ Consecutive | | Restitution/Recoupment Restitution **Amount unknown** |
| OTHER SENTENCE PROVISIONS | ☐ Habitual Offender  ☐ Youthful Offender (Act 335-72)  ☐ Restitution (Specify & Attach Order)  ☐ Recoupment (Specify & Attach Order)  ☐ Life  ☑ Life w/o Parole  ☐ Death | | Attorney Fee _____  Court Cost **$345.00**  Fine **$50.00 to ACVCC** |

| APPEAL INFORMATION | [x] Yes [ ] No  12/16/91 | Sentence Suspended  Date: Pending Appeal [ ] Yes [x] No  12/16/91 | Sentence Affirmed:  Date: [ ] Yes | Date Rearrested: |

105 691A (307)

REMARKS AND OTHER INFORMATION (CONTINUE ON REVERSE SIDE IF NEEDED)

20345

12/16/91, Defendant is sentenced to LIFE imprisonment in the penitentiary of the State of Alabama and is fined $50.00 to ACVCC and is to make restitution and costs. Defendant gave notice of appeal and will serve sentence pending appeal. Hon. Eddie Beason will represent defendant on appeal. John D. Jolly, Judge.

This is to certify that the above information was extracted from official court records and is true and correct according to the record.

(Affix Court Seal)

December 18, 91
Date

**J. T. Newton**
Print or Type Name of Clerk

Signature

ENTERED TERMINEE
DATE 12-23-9  BY

EXHIBIT
**B**
PENGAD-Bayonne,N.J.

STATE OF ALABAMA )
)
MONTGOMERY COUNTY )

### AFFIDAVIT

BEFORE ME, the undersigned authority for said County and State, personally appeared **Ann W. Gault**, who is known to me, and after being duly sworn, deposed and said as follows:

My name is **Ann W. Gault.** I am employed as the Board Operations Manager with the Alabama Board of Pardons and Paroles. In that capacity, among other duties, I am the Custodian of the parole files.

The attached Board Order, dated March 6, 2007, is a true and correct copy taken from the parole file of Jimmy Frank Cameron, AIS# 105591S. The Board Order shows that Jimmy Frank Cameron was considered for parole consideration on March 6, 2007, in open public meeting, where he was denied parole and reset for March of 2009.

_Ann W. Gault_
**ANN W. GAULT**
**BOARD OPERATIONS MANAGER**

SWORN TO AND SUBSCRIBED before me this 5th day of March z 2007.

_____
NOTARY PUBLIC
Commission Expires: 4-6-10

EXHIBIT
C

PENGAD Bayonne N.J.

STATE BOARD OF PARDONS AND PAROLES
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME CAMERON JIMMY FRANK    AIS# 105591                DOCKET 03/2007
                                                   1/3   11/27/2001
PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____    INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____    PRISON AUTHORITY REPORT IS SATISFACTORY.
_____    UPON ACCEPTANCE BY (STATE OF)
_____    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
          IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
          LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
          IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____    INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____    OTHER_____

MEMBER _____ DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____    INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____    PRISON AUTHORITY REPORT IS SATISFACTORY.
_____    UPON ACCEPTANCE BY (STATE OF)
_____    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
          IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
          LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
          IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____    INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____    OTHER_____

MEMBER _____ DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____    INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____    PRISON AUTHORITY REPORT IS SATISFACTORY.
_____    UPON ACCEPTANCE BY (STATE OF)
_____    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
          IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
          LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
          IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____    INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____    OTHER_____

MEMBER _____ DATE _____

SPECIAL CONDITIONS _____
_____
_____

CONTINUED TO _____
_____

PAROLE IS THIS DAY DENIED ____3 6-07_____ BY:
DATE                          MEMBER                          RESET
3/6/09        _Sidney T. Williams_        3/09

3-6-09        _Robert Longshore_          3-09
REMARKS



# State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR



**DONAL CAMPBELL**
COMMISSIONER

November 10, 2004

ADMINISTRATIVE REGULATION          OPR:  CLASSIFICATION
NUMBER          400

## CLASSIFICATION OF INMATES

### I.     GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for initial inmate classification at Tutwiler Prison for Women (Tutwiler) and the Receiving and Classification Center (RCC) and for reclassification at all institutions.

### II.     POLICY

Inmates incarcerated in the ADOC will be classified into groups by security level, custody, and program needs as defined in the ADOC Classification Manual. The ADOC Classification Manual is the document of direction in all matters of inmate classification and procedures thereunto.

### III.     DEFINITION(S) AND ACRONYM(S)

A.     Central Review Board (CRB):  The CRB is composed of Central Classification Division Classification Supervisors who review the security level, custody, and placement recommendations for inmates made by institutional classification specialists and supervisors, for approval, denial, or amendment.

B.     Receiving and Classification Center (RCC):  The Receiving and Classification Center for male inmate is located at the Kilby Correctional Institution, for female inmates it is located at Tutwiler Prison for Women.

C.     Job Board:  The institutional Job Board will be composed of the Warden or designee, ICS Officer, Job Supervisors, Classification Personnel where available, and other personnel as required to be designated by the institutional standard operating procedures (SOPs) to consider initial inmate job assignments, inmate job changes, and any other institutional inmate assignment as deemed appropriate. The Warden is ultimately responsible for all decisions made by the institutional Job Board.

D.     ICS:  Inmate Control System



EXHIBIT

D

PENGAD-Bayonne N.J.

E.    Institutional Classification Committee:  This committee reviews the security level, custody, and placement of inmates at the institution and submits their recommendations to the CRB. This committee is made up of a Classification Specialist, a Warden or designee, and a Psychologist Associate if a Psychologist is unavailable.

F.    Classification:  The process of sorting inmates into groups by security level, custody, and program needs using interviews, tests, scoring instruments, and behavior records as well as official court documents and reports from police and other criminal justice agencies.

G.    Reclassification:  The process of periodically reviewing the progress of inmates to determine what, if any, revisions should be made to the placement of inmates within a particular group as to security level, custody, and/or program.

H.    Security Levels:  The rating assigned to the various institutions and placement options within the ADOC and to inmates through classification procedures for the purpose of placement within the ADOC.

I.    Custody Levels:  A level of supervision required for an inmate at the institution, within the ADOC, where the inmate is confined. An inmate can be assigned a custody level of maximum, close, medium, minimum-in, minimum-out, or community.

## IV.    RESPONSIBILITIES

A.    The Deputy Commissioner of Operations is responsible for the classification function.

B.    The Director of Classification is responsible for:

    1.    Implementing and evaluating plans and programs for classification.

    2.    Reviewing and drafting classification regulations.

    3.    Implementing policy and procedures.

    4.    Supervising Central Review Board (CRB).

    5.    Advising institutional classification staff.

    6.    Developing and updating the classification manual.

C.    The Assistant Director of Classification is responsible for assisting the Director of Classification at both the central and institutional offices.

D.    The CRB is responsible for reviewing and determining the final action to be taken

AR 400 – November 10, 2004

on recommendations for institutional security levels, custody levels, program needs, and assignment of inmates as recommended by the institutional classification committee.

E.    The responsibilities of the Warden or designee to the classification committee include input to classification decision-making based upon the offender's behavior which might affect custody and security level.

## V.    PROCEDURES

A.    Initial Receiving and Central Classification at RCC and Tutwiler:

1.    The institutional Classification Supervisor is responsible for the coordination of the reception, admission, and processing of inmates received at RCC and Tutwiler and for the ongoing classification of inmates.

2.    The classification committee, headed by the classification specialist or supervisor, is responsible for providing orientation, scheduling interviews, processing procedures, data compilation and entry, and recommendations consistent with the Classification Manual.

3.    The Psychologist or Psychologist Associate are responsible for the following:

a.    Performing psychometric evaluation of inmates.

b.    Conducting interviews as appropriate.

c.    Assembling relevant information to the inmate's probable adjustment.

d.    Providing recommendations for assignment and treatment.

e.    Serving as a member of the institutional classification committee.

B.    Institutional Reclassifications:

1.    The Classification Supervisor, in accordance with the Classification Manual shall:

a.    Implement the classification system as set forth in the Classification Manual.

b.    Supervise the institutional classification staff.

2.    The Classification Specialist is the chairperson for the institutional reclassification committee and shall:

3 of 5

    a.     Schedule annual reclassification and other reclassification (progress review) dates.

    b.     Obtain and verify all of the information used in the progress reviews.

    c.     Provide inmates with the information regarding all classification matters.

    d.     Providing recommendations for assignment and treatment.

    e.     Serving as a member of the institutional classification committee.

3.     Reasons for reclassification prior to the annual date include, but are not limited to:

    a.     The receipt of new information or circumstances which may warrant a change in custody level or institution assignment (such as new convictions or detainers).

    b.     The inmate has completed a recommended program and requires updated recommendations.

    c.     The Warden directs review of the inmate's status for administrative purposes.

    d.     The inmate's current disciplinary conviction record suggests the need for increased supervision.

## VI.   <u>DISPOSITION</u>

Any forms will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   <u>FORMS</u>

The forms prescribed in this regulation may be found in the ADOC Classification Manual.

## VIII.   <u>SUPERCEDES</u>

This regulation supercedes AR 400, dated April 10, 1985, and AR 401, dated April 3, 1985, and all changes.

## IX.   <u>PERFORMANCE</u>

A.    Code of Alabama, 1975, Section 14-1-1

B.    ADOC Classification Manual


_Donal Campbell_

Donal Campbell, Commissioner

```
                    ALABAMA DEPARTMENT OF CORRECTIONS          INST:   045
CB2716-3            INMATE SUMMARY AS OF 11/20/2006            CODE:  CORVK

*******************************************************************************

AIS: 00135591S    INMATE: CAMERON, JIMMY FRANK              RACE: W  SEX: M

INST: 045 - BULLOCK CORRECTIONAL FACILITY    DORM:  00  JAIL CR: 000Y 00M 18D

DOB: 12/30/1949  SSN: 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

ALIAS: CAMERON, JIMMY                         ALIAS: CAMERON, JIMMY F

ADM DT: 12/15/1991 DEAD TIME: 000Y 00M 00D

ADM TYPE: LIFE SENTENCE                  STAT: REMOVED FROM SEGREGATION

CURRENT CUST: MED-9   CURRENT CUST DT: 06/01/2005  PAROLE REVIEW DATE: MAR 2007

SECURITY LEVEL: (4) FOUR

SERVING UNDER ACT446 LAW IN CLASS IV      CURRENT CLASS DATE:   12/15/1991
INMATE IS EARNING / PROHIBITED FROM EARNING GOODTIME

COUNTY     SENT DT  CASE NO.  CRIME                    JL-CR     TERM
FRANKLIN   12/16/91 W91300035 BURGLARY II              0018      LIFE       CS
           ATTORNEY FEES : $001355    HABITUAL OFFENDER : N
           COURT COSTS   : $0000343   FINES : $0000000   RESTITUTION : $0000050
LIMESTONE  03/28/97 W97000033 FROM PRISON CNTRBND II   * 0000  002Y 00M 00D CC

  TOTAL TERM      MIN RELE DT      GOOD TIME BAL      GOOD TIME REV      LONG DATE
   LIFE           00/00/0000                                            99/99/9999

INMATE LITERALS:
*******************************************************************************

DETAINER WARRANTS SUMMARY
    INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
*******************************************************************************

ESCAPEE-PAROLE SUMMARY

    INMATE CONVICTED ON 05/08/1980 FOR ESCAPE II

PAROLED FRM  000:02/11/80 RVK:00/00/00 DELQ:02/11/80 RECAP:07/09/83 RTN:09/22/80

PAROLED FRM  050:10/23/00 RVK:02/07/01 DELQ:11/27/00 RECAP:11/02/00 RTN:11/21/00

PAROLED FRM  050:05/10/04 RVK:03/21/05 DELQ:01/31/05 RECAP:01/21/05 RTN:01/21/05

    INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

    INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING 8
*******************************************************************************

DISCIPLINARY/CITATION SUMMARY


                          CONTINUED ON NEXT PAGE
```

A

CJP040 ·                        S    E DEPARTMENT OF CORRECTIC   S

, INITIAL                    CLASSIFICATION SUMMARY                      DATE-01/15/92

AIS#-00105591A     NAME-CAMERON, JIMMY FRANK              RACE-W   SEX-M

INSTITUTION-HOSPITAL                                     DOB-12/30/48

PAROLE CONSIDERATION DATE-00/00                          SSN-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

ALIAS-CAMERON, JIMMY

EMERGENCY ADDRESS-RT 1 BOX 417                    TUSCUMBIA                    AL

HAIR-BRO          EYES-GRN          HEIGHT-5FT10IN     WEIGHT-143LB

CURRENT CUSTODY-QUR9              HIGHEST GRADE LEVEL COMPLETED-09  *GED*

PRI OCCUPATION-LABORER - GENERAL

SEC OCCUPATION-.............................................................

MIN RELEASE DATE-99/99/9999            LONG RELEASE DATE-99/99/9999
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                          CURRENT CONVICTIONS

  DATE               CRIME               TERM      CS/CC NO    RST.      FEES

12/16/91  BURGLARY II                  999Y99M99D   CS   N  0000050   000000
VICTIM INFO- *bldg. of residence.* .........................................

  ......................................................................
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                             DETAINERS

  NO ACTIVE DETAINERS FOUND ON FILE.

POSSIBLE DETAINERS- *None per sheriff dept.* ...............................

  ......................................................................
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                          PRIOR CONVICTIONS

  DATE                CRIME               TERM      CS/CC NO    RST.      FEES

02/03/72  BURGLARY II (OLD CODE/PRIOR JA  008Y00M00D   CS      0000000   000000
05/14/76  CRIME AGAINST NATURE/SODOMY/HE  010Y00M00D   CS      0000000   000000
05/08/80  BURGLARY III                    005Y00M000D  CC      0000000   000000

CAMERON, JIMMY F     .                    CONTINUED

| 05/08/80 | ESCAPE II | 005Y00M00D | CC | 0000000 | 000000 |
| 05/08/80 | PROMOTING PRISON CONTRABAND I | 005Y00M00D | CC | 0000000 | 000000 |
| 05/08/80 | ARSON II (OLD CODE/PRIOR JAN | 005Y00M00D | CC | 0000000 | 000000 |

POSSIBLE OUT OF STATE CONVICTIONS- *None listed* ...................

................................................................

------------------------------------------------------

ESCAPES

NO ESCAPE RECORDS FOUND ON FILE

OTHER THAN STATE ESCAPES/ESCAPE BEHAVIOR- *escape Lawrence Co. jail*
*No force 1980 No force.*

------------------------------------------------------

PAROLE & PROBATION

NO P&P RECORDS FOUND ON FILE

------------------------------------------------------

DISCIPLINARIES

NO DISCIPLINARIES FOUND ON FILE

------------------------------------------------------

KNOWN ENEMIES

NO ENEMIES FOUND FOR THIS INMATE

POSSIBLE ENEMIES- *None, Jimmy F. Cameron  1-24-92* ...

................................................................

------------------------------------------------------

PSYCHOLOGICAL COMMENTS- ...........................................

................................................................

------------------------------------------------------

PHYSICAL COMMENTS- *Class I per name at etc. 108* ..........

................................................................

------------------------------------------------------

NAME AND ADDRESS OF FAMILY MEMBERS

SPOUSE- *deceased* ...............................................

CAMERON, JIMMY FT                         CONTINUED

FATHER- William Cameron          Alex City, Al.

MOTHER- Louise        "          Russellville,  "

SIBLINGS- Carolyn   Winn   45

CHILDREN- Rebecca  21.   Wesley W.

Scott   Avis   41,   446-5041   Leighton, Al.
Patricia  Cameron  40
Elsie        "      39